## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Joy Rahaman,

                 Plaintiff,

v.

State Farm Mutual Insurance
Company,

                 Defendant.

_____/

Case No. 22-10635

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A.
Stafford

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR FOR SUMMARY JUDGMENT [39]

Before the Court is Defendant State Farm Mutual Insurance Company's motion for judgment on the pleadings and/or for summary judgment. (ECF No. 39.) For the reasons set forth below, the motion is granted.

### I.    Background

This case is one in a series of lawsuits brought by Plaintiff Joy Rahaman. On September 3, 2016, Plaintiff was involved in a car accident in which she was rear-ended by Jessica Norman. At the time of the

accident, Norman was driving a car owned by Randy Saenz. The car was insured under a policy issued to Saenz by Defendant. The policy included "bodily injury" coverage of $25,000 per person. (ECF No. 39-3, PageID.1334, 1344.)

Plaintiff sued Saenz and Norman in Wayne County Circuit Court on May 25, 2017. (*See* ECF No. 39-4, PageID.1379.) Plaintiff was represented at the time by attorney Kevin Geer.[1] (*Id.*) Under Saenz's policy, Defendant was obligated to obtain an attorney to defend Saenz and Norman at its expense. (*See* ECF No. 39-3, PageID.1345.) On or about June 27, 2017, Defendant retained attorney Michelle Boedeker to represent Saenz and Norman. (ECF No. 39-6, PageID.1412; ECF No. 39-9, PageID.1428.) Following negotiations between Geer and Boedeker, the parties agreed to settle Plaintiff's third-party negligence claims against Saenz and Norman for $20,000. (ECF No. 39-6, PageID.1412–1413.) Plaintiff signed the associated release on July 31, 2018. (ECF No. 39-7, PageID.1419–1420.) On August 1, 2018, Defendant issued a check to Plaintiff and Geer's firm for $20,000. (ECF No. 39-8, PageID.1422–1425.)

---

[1] Plaintiff indicates that Geer passed away on April 12, 2019. (ECF No. 1, PageID.10.)

Defendant's records reflect that the check was cashed. (*See* ECF No. 39-8, PageID.1425; ECF No. 39-9, PageID.1428.)

Plaintiff, through Geer, also sued her own insurer, IDS Property Casualty Insurance Company, in Wayne County Circuit Court, seeking payment of first-party personal injury protection ("PIP") benefits related to the accident.[2] *See Rahaman v. Ameriprise Ins. Co.*, No. 349463, 2020 WL 6939740, at *1 (Mich. Ct. App. Nov. 24, 2020), *leave denied*, 507 Mich. 932 (2021). In September 2018, counsel for both parties executed an arbitration agreement. *Id.* "In November 2018, plaintiff, defendant, and their attorneys participated in an arbitration hearing. The arbitration ended with a $130,000 award in plaintiff's favor and the waiver of future medical benefits." *Id.*

Plaintiff subsequently claimed that she never agreed to the arbitration with IDS. *Id.* However, the trial court granted IDS's motion to enforce the arbitration agreement and denied Plaintiff's motion to vacate the arbitration award. *Id.* at *2. The Michigan Court of Appeals

---

[2] In this case, "Plaintiff named Ameriprise Insurance Company as defendant but, in its answer, defendant IDS identified itself as the proper defendant and Ameriprise as having been 'improperly captioned' as the defendant." *Rahaman v. Ameriprise Ins. Co.*, No. 349463, 2020 WL 6939740, at *1 n.1 (Mich. Ct. App. Nov. 24, 2020).

affirmed the state trial court's decision, *id.* at *2–4, and the Michigan Supreme Court denied Plaintiff leave to appeal. *Rahaman v. Ameriprise Ins. Co.*, 507 Mich. 932 (2021). Plaintiff also filed a *pro se* complaint against IDS in the Eastern District of Michigan alleging, among other things, that counsel for IDS and Geer conspired to defraud her.[3] *See Rahaman v. Am. Connect Fam. Prop. & Cas. Ins.*, No. 20-CV-11628, 2021 WL 9563330, at *1 (E.D. Mich. Nov. 29, 2021), *report and recommendation adopted*, 2022 WL 4596305 (E.D. Mich. Sept. 30, 2022). This Court dismissed the federal case against IDS with prejudice. *See Rahaman*, 2022 WL 4596305, at *3–8.

On March 24, 2022, Plaintiff, proceeding *pro se*, filed this action against Defendant. (ECF No. 1.) In her complaint, Plaintiff alleges that Defendant, Geer, Boedeker, counsel for IDS, and others conspired against her, and that she did not authorize the lawsuit against Saenz and Norman. (*See id.* at PageID.13–19.) She also asserts that "[Geer] and Defendant 'tricked' Plaintiff into signing the check for $20,000.00 under

---

[3] While Plaintiff identified the defendant in her federal complaint as "American Connect Family Property and Casualty Insurance," the defendant asserted that it was properly identified as "IDS Property Casualty Insurance Company." *Rahaman v. Am. Connect Fam. Prop. & Cas. Ins.*, No. 20-11628, 2022 WL 4596305, at *1 n.1 (E.D. Mich. Sept. 30, 2022)

false pretense[s]." (*Id.* at PageID.18.) As part of this alleged conspiracy, Plaintiff asserts that Boedeker sent Geer an email on March 3, 2017 in which she identified Plaintiff as a Muslim; repeatedly used the n-word; admitted to paying a neighbor to surveil Plaintiff; and claimed Plaintiff was HIV positive, used marijuana and cocaine, had a criminal record, and had a fifth-grade education. (*See id.* at PageID.13–14; ECF No. 42-1, PageID.1535–1536.) Plaintiff also contends that Defendant put a tracker on her truck in 2016 and has used drones to stalk her for over five years. (ECF No. 1, PageID.28, 30.) In her complaint, Plaintiff asserts sixteen claims against Defendant.[4]

On November 21, 2022, Defendant filed a motion for judgment on the pleadings and/or for summary judgment. (ECF No. 39.) On November 22, 2022, the Court held an on-the-record status conference to address on-going discovery disputes between the parties. During that conference,

---

[4] Plaintiff's claims are: (1) "violation of seventh amendment," (2) "civil conspiracy to interfere with civil rights," (3) "fraud and false statements," (4) "fraud misrepresentation," (5) "concealment," (6) "fraudulent inducement of a contract," (7) "violation of 42 USC 12102 (2)(3) (serious impairment of a bodily function)," (8) "violation of persons with disability," (9) "negligence," (10) "gross negligence," (11) "racial discrimination," (12) "intentional misconduct, (13) "defamation," (14) "intentional infliction of emotional distress," (15) "stalking," and (16) "bad faith practices." (ECF No. 1, PageID.19–31.)

the Court instructed Plaintiff to identify the additional discovery she claimed she needed and to explain why the discovery was necessary to respond to Defendant's motion. On November 29, 2022, Plaintiff filed her response to the motion. (ECF No. 42.) On December 7, 2022, Plaintiff filed two notices listing numerous document requests. (ECF Nos. 58, 59.) Defendant subsequently filed a reply (ECF No. 61) and a response to Plaintiff's notices. (ECF No. 63.)

## II.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, if the motion also requests summary judgment in the alternative, no additional notice to the non-moving party is required. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)). However, "[t]o defeat a motion for summary judgment a plaintiff 'can no longer rely on the conclusory allegations of [her] complaint.'" *Warf v. U.S. Dep't of Veterans Affs.*, 713 F.3d 874, 878 (6th Cir. 2013) (quoting *Daily Press, Inc. v. United Press Int'l.*, 412 F.2d 126, 134 (6th Cir. 1969)).

In its motion, Defendant seeks judgment on the pleadings pursuant to Rule 12(c) "and/or" summary judgment pursuant to Rule 56. (ECF No. 39, PageID.1254.) Defendant attached fourteen exhibits to its motion, including affidavits from Boedeker and Jason Snyder, an employee of

Defendant. (*See* ECF Nos. 39-1, 39-6, 39-9.) In her response, Plaintiff repeatedly cites to Rule 56 and acknowledges that the motion seeks both judgment on the pleadings and/or summary judgment. (*See generally* ECF No. 42.) Therefore, the Court will consider the motion as one for summary judgment under Rule 56 and concludes that no additional notice to Plaintiff is required.

Because Plaintiff is proceeding *pro se*, the Court must construe Plaintiff's filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Despite being "held to less stringent standards," *pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).

## III.   Analysis

### A.   Violation of Seventh Amendment, Civil Conspiracy to Interfere with Civil Rights, and Racial Discrimination

In her complaint, Plaintiff brings claims for "violation of seventh amendment," "civil conspiracy to interfere with civil rights" under 42 U.S.C. § 1985, and "racial discrimination." (ECF No. 1, PageID.19–20, 27–28.) Each of these claims fail.

8

First, Plaintiff's claim for violations of her right to a jury trial under the Seventh Amendment of the United States Constitution cannot succeed because that federal right does not apply to proceedings in state courts. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 418, 432 (1996) (stating that the Seventh Amendment "governs proceedings in federal court, but not in state court"). As such, the Court grants summary judgment to Defendant on this claim.

Turning to Plaintiff's claim of conspiracy under § 1985, "[a] civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To establish a claim for civil conspiracy under § 1985(3), a plaintiff must establish "(1) that a single plan existed; (2) that the alleged conspirators shared in the general conspiratorial objective to deprive the plaintiff of [her] constitutional or federal statutory rights; and (3) that an overt act was committed in furtherance of the conspiracy that caused injury." *Barkovic v. Att'y Griev. Comm'n*, 289 F. Supp. 3d 833, 843 (E.D. Mich. 2017) (citing *Hooks*, 771 F.2d at 944). Additionally, the conspiracy must "target[] a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the

Supreme Court's equal-protection framework." *Post v. Trinity Health-Mich.*, 44 F.4th 572, 580 (6th Cir. 2022) (citing *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)).

While Plaintiff's allegations are difficult to follow, she appears to contend that Defendant conspired with Boedeker, Geer, and counsel for IDS to prevent her from fully recovering under her third-party negligence claims against Saenz and Norman. (*See, e.g.*, ECF No. 1, PageID.11, 14, 16–18, 20; ECF No. 42, PageID.1519; ECF No. 42-1, PageID.1535–1536.) However, Plaintiff fails to explain how this alleged conspiracy sought to deprive her of a constitutional or federal statutory right. Nor does Plaintiff provide any evidence that *Defendant* had knowledge of the alleged objective of this conspiracy, targeted Plaintiff because of her race or other protected characteristic, or took any overt act in furtherance of the conspiracy. *See Barkovic*, 289 F. Supp. 3d at 843. Accordingly, the Court also grants summary judgment to Defendant on Plaintiff's civil conspiracy claim.

With respect to her claim for "racial discrimination," Plaintiff fails to identify the basis for her claim. Because Plaintiff is *pro se*, the Court construes this claim liberally as a claim under 42 U.S.C. § 1981. Section

10

1981 prohibits "intentional race discrimination in the making and enforcing of contracts with both public and private actors." *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001) (citing 42 U.S.C. § 1981). But Plaintiff did not have a contractual relationship with Defendant, nor did Plaintiff engage in the making, performance, modification, or termination of a contract with Defendant. *See* 42 U.S.C. § 1981(b). Thus, § 1981 is inapplicable here, and the Court grants summary judgment to Defendant on this claim.

## B.   Negligence and Gross Negligence

Plaintiff also brings claims for negligence and gross negligence.[5] (ECF No. 1, PageID.25–27.) Under Michigan law, a negligence claim requires (1) "that the defendant owed a legal duty to the plaintiff," (2) "that the defendant breached or violated the legal duty," (3) "that the plaintiff suffered damages," and (4) "that the breach was a proximate

---

[5] To the extent Plaintiff asserts these claims based on the underlying tortious conduct of Norman and Saenz or to obtain additional third-party benefits related to the 2016 accident, those claims are barred by the doctrine of res judicata. *See Talbot v. U.S. Bank Nat'l Ass'n*, 814 F. App'x 1, 3 (6th Cir. 2020) (explaining that, under Michigan law, "res judicata bars a second action when '(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first'" (quoting *Adair v. State*, 470 Mich. 105, 121 (2004)).

cause of the damages suffered." *Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993) (citing *Roulo v. Auto. Club of Mich.*, 386 Mich. 324, 328 (1971)). "The threshold question in any negligence action is whether the defendant owed a legal duty to the plaintiff." *Bell & Hudson, PC v. Buhl Realty Co.*, 185 Mich. App. 714, 717 (1990) (citations omitted). "In determining whether a duty exists, courts examine a wide variety of factors, including the relationship of the parties and the foreseeability and nature of the risk. Most importantly, for a duty to arise there must exist a sufficient relationship between the plaintiff and the defendant." *Schultz*, 443 Mich. at 450 (citation and footnote omitted).

In her complaint, Plaintiff fails to identify a duty owed to her by Defendant, offering only a conclusory statement that Defendant "owed the Plaintiff a duty and they breached that duty through an act or culpable omission." (ECF No. 1, PageID.25.) Moreover, Plaintiff does not identify any relationship between her and Defendant that would give rise to a duty. And to the extent Plaintiff's claim is premised on a duty owed to her by Boedeker, it is foreclosed by Michigan law. *See Friedman v. Dozorc*, 412 Mich. 1, 20–30 (1981) (declining to recognize a duty of care owed by an attorney to an adverse party in litigation). Accordingly, the

12

Court grants summary judgment to Defendant on Plaintiff's negligence claim.

Plaintiff gross negligence claim fares no better. As this Court has explained, "[g]ross negligence is not an independent cause of action in Michigan." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 871 (E.D. Mich. 2019) (citing *Xu v. Gay*, 257 Mich. App. 263, 268–69 (2003)), *aff'd and remanded*, 960 F.3d 303 (6th Cir. 2020); *see also Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009) ("[T]he Michigan Supreme Court repudiated the common-law concept of gross negligence, reasoning that when it abandoned the contributory-negligence doctrine . . . the concept of gross negligence was no longer needed."). Accordingly, the Court also grants summary judgment to Defendant on Plaintiff's gross negligence claim.

### C.   Fraud and False Statements, Fraudulent Misrepresentation, and Fraudulent Inducement of a Contract

The complaint also includes claims for "fraud and false statements,"[6] "fraud[ulent] misrepresentation,"[7] and "fraudulent inducement of a contract." (ECF No. 1, PageID.20–23.) Defendant argues that these claims fail under Federal Rule of Civil Procedure 9(b). (ECF No. 39, PageID.1276–1277.) The Court agrees.

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a broad level, 'Rule 9(b) requires that the plaintiff specify the "who, what, when, where, and how" of the alleged fraud.'" *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

---

[6] With respect to her fraud claim, Plaintiff references 18 U.S.C. § 1001. (*See* ECF No. 1, PageID.3, 20.) However, that federal criminal statute "does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." 18 U.S.C. § 1001(b). Moreover, there is no private right of action to enforce this federal criminal statute. As Plaintiff is proceeding *pro se*, the Court will liberally construe her claim as one for fraud under Michigan law.

[7] The complaint cites to "17 U.S.C. § 240" in support of Plaintiff's fraudulent misrepresentation claim. (ECF No. 1, PageID.3, 21.) The Court was unable to locate any such statute. However, the Court will consider this claim under Michigan law.

In the context of fraud claims based on misrepresentation, a plaintiff must identify "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021) (internal quotation marks omitted) (quoting *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017)). For fraud claims based on omission, a plaintiff must establish "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (citing *Sanderson*, 447 F.3d at 877).

In general, Plaintiff's complaint fails to identify the specific misrepresentations made *by Defendant* that support her claims for fraud, fraudulent misrepresentation, and fraudulent inducement of a contract. Plaintiff alleges that "Defendant fraudulently misrepresented the $20,000.00 as 'paying for my wage loss and attendant care' to cover what the first party had not paid while I was recovering from surgery," (ECF

No. 1, PageID.18), but she fails to identify who made that statement or when or where the statement was made. Additionally, Plaintiff's response to Defendant's motion fails to point to any evidence of these alleged misrepresentations. Moreover, as set forth below, to the extent Plaintiff's claims are based on Boedeker's alleged conduct, Defendant cannot be held vicariously liable for that conduct because Boedeker was neither Defendant's employee nor agent. Accordingly, the Court grants summary judgment to Defendant on Plaintiff's claims for fraud, fraudulent misrepresentation, and fraudulent inducement of a contract.

## D.    Concealment

Plaintiff also brings a claim for "concealment."[8] Under Michigan law, fraudulent concealment requires that "the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud." *Maurer v. Fremont Ins. Co.*, 325 Mich. App. 685, 695 (2018) (citing *M&D, Inc.*, 231 Mich. App. at 28–29). In her complaint,

---

[8] With respect to her "concealment" claim, Plaintiff cites to 18 U.S.C. § 2071. (ECF No. 1, PageID.3, 22.) But Plaintiff fails to explain how this federal criminal statute provides the basis for a private cause of action. However, Michigan courts do recognize the tort of "silent fraud," also referred to as fraud by nondisclosure or fraudulent concealment. *See M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 28–29 (1998). Because Plaintiff is *pro se*, the Court will liberally construe her "concealment" claim as a claim for fraudulent concealment under Michigan law.

16

Plaintiff alleges that Defendant withheld information related to Saenz and Norman, portions of a police report, and the extent of Plaintiff's own injuries. (*See* ECF No. 1, PageID.17–18.) But Plaintiff fails to demonstrate that Defendant—who was not a party to the underlying litigation—had a duty to disclose this information to her. Moreover, as with her claims for fraud, Plaintiff fails to provide any evidence to support her allegations that Defendant concealed the information listed above. As such, the Court also grants summary judgment to Defendant on Plaintiff's fraudulent concealment claim.

### E.   Violation of Persons with Disability

In her eighth claim, "violation of persons with disability," Plaintiff cites to 42 U.S.C. § 12102, which is the definition of "disability" under the Americans with Disabilities Act ("ADA"). (*See* ECF No. 1, PageID.24–25.) But the ADA's definition of disability is not a cause of action, and it is unclear from the complaint which of the ADA's prohibitions Plaintiff is alleging Defendant violated. Nevertheless, because Plaintiff is *pro se*, the Court will briefly consider whether any of the ADA's provisions apply.

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title

17

I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tenn. v. Lane*, 541 U.S. 509, 516–17 (2004). However, Title I is inapplicable because Plaintiff does not allege that Defendant was a "covered entity" or that Defendant was her employer. *See* 42 U.S.C. § 12111(2), (5). Likewise, Title II and Title III do not apply because Defendant is not a public entity, nor a public accommodation under the ADA. *See* 42 U.S.C. §§ 12131(1), 12181(7). Therefore, the Court grants summary judgment to Defendant on this claim.

## F.    Violation of 42 U.S.C. § 12102

The complaint also contains a separate claim for "violation of 42 USC 12102 (2)(3)"[9] with the subheading of "serious impairment of a bodily function." (ECF No. 1, PageID.23–24.) In support of this claim, Plaintiff cites to Michigan Model Civil Jury Instruction 50.04, which is a damages instruction related to the aggravation of a preexisting condition. (*See id.* at PageID.24.) She also alleges that Defendant "conceal[ed] the

---

[9] As noted above, 42 U.S.C. § 12102 is the definition of "disability" under the ADA.

Taylor Police Department narrative report" and engaged in discrimination based on "national origin and ancestry." (*Id.*)

To the extent this claim seeks relief under the ADA, it fails for the reasons set forth above. Moreover, Plaintiff's reliance on the Michigan Model Civil Jury Instructions is similarly misplaced, as this damages instruction does not provide a cause of action. Finally, to the extent Plaintiff seeks to recover pursuant to Mich. Comp. Laws § 500.3135 for a "serious impairment of body function" related to the 2016 accident, her claim is barred under res judicata. *See Talbot*, 814 F. App'x at 3. Accordingly, the Court grants summary judgment to Defendant on this claim.

## G.   Defamation and Intentional Infliction of Emotional Distress

Plaintiff's complaint also includes claims for defamation[10] and intentional infliction of emotional distress ("IIED")[11] based on the alleged

---

[10] To the extent Plaintiff asserts her defamation claim under 28 U.S.C. § 4101 (*see* ECF No. 1, PageID.3), that statute concerns "when a United States court may recognize and enforce a foreign judgment for defamation" and "does not apply here." *Rahaman*, 2021 WL 9563330, at *5. However, because Plaintiff is proceeding *pro se*, the Court will consider her defamation claim under Michigan law.

[11] Plaintiff appears to assert her IIED claim under 42 U.S.C. § 1981. (*See* ECF No. 1, PageID.3, 29.) For the reasons set forth above, § 1981 is inapplicable here.

March 3, 2017 email from Boedeker to Geer.[12] (*See* ECF No. 1, PageID.13, 28–30; ECF No. 42-1, PageID.1535–1537.) In its motion, Defendant argues that it cannot be held vicariously liable for Boedeker's alleged actions because she was not Defendant's employee. (ECF No. 39, PageID.1286–1287.) The Court agrees.

Under Michigan law, "an employer may be held liable for the tortious conduct of its employee so long as that conduct was 'committed in the course and within the scope of the employee's employment,' but *not* if the act was outside the employee's authority or committed for the employee's own personal purposes." *Mueller v. Brannigan Bros. Rests. & Taverns LLC*, 323 Mich. App. 566, 572 (2018) (emphasis in original) (quoting *Bryant v. Brannen*, 180 Mich. App. 87, 98 (1989)); *Hamed v.*

---

Nevertheless, because Plaintiff is *pro se*, the Court will consider Plaintiff's IIED claim under Michigan law.

[12] Plaintiff alleges that "she found this email in her PIP file," which she received in June 2019 following Geer's death. (*See* ECF No. 1, PageID.10, 29.) In an affidavit filed in a related case, *Rahaman v. Spine Specialists of Michigan*, Boedeker denies that she made the statements in the alleged email and asserts that the email is fraudulent. (ECF No. 61-5, PageID.2125 ("The email correspondence was not drafted or sent by me nor was I aware of it until this lawsuit was filed[.]").) The Court has reason to doubt the email's authenticity and considered issuing a show cause order requiring Plaintiff to explain how she obtained the email under penalty of perjury. However, because Plaintiff's claims fail regardless of the email's authenticity, the Court need not reach the issue at this time.

*Wayne Cnty.*, 490 Mich. 1, 12 (2011). "[I]n the absence of an employer-employee relationship, vicarious liability may also attach through the concept of agency." *Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 735 (2016). However, "an employer is generally not liable for the actions of an independent contractor." *Id.* (citing *Campbell v. Kovich*, 273 Mich. App. 227, 233–34 (2006)). "[T]he test for whether a worker is an independent contractor or an employee is whether the worker has control over the method of his or her work . . . ." *Id.* at 736 (quoting *Campbell*, 273 Mich. App. at 234). "[N]ot just any type of control will suffice to transform an independent contractor into an employee or agent; rather, the control must relate to the method of the work being done." *Id.*

In support of its assertion that Boedeker was an independent contractor and not its employee or agent, Defendant provides affidavits signed by Boedeker and Snyder, a "claim team manager" for Defendant. (*See* ECF Nos. 39-6, 39-9.) In her affidavit, Boedeker states:

> 4.    I am not, nor have I ever been an employee of State Farm Mutual Automobile Insurance Company. . . . ;
>
> 5.    On or about June 27, 2017, I was retained by State Farm to represent Randy Saenz and Jessica Norman, in a third-party no-fault case that was filed against them by attorney Kevin Geer on behalf of Joy Rahaman in the Wayne County

Circuit Court and assigned to the Honorable David J. Allen under case number 2017-007935-NI.

. . . .

10.    State Farm did not control how I defended Mr. Saenz and Ms. Norman did not and does not control the manner in which I conduct my practice, or the cases I am handling[.]

(ECF No. 39-6, PageID.1411–1412.) Snyder confirms in his affidavit that:

7.    After State Farm received a copy of the lawsuit Ms. Rahaman had filed against Mr. Saenz and Ms. Norman, it retained Michelle Boedecker of Boedecker Law, P.C. [sic] to defend them in that lawsuit.

8.    Ms. Boedecker [sic] was retained on or about June 27, 2017.

9.    I did not instruct Ms. Boedecker [sic] on the manner in which she should handle the defense, as I left that up to her expertise in these matters.

(ECF No. 39-9, PageID.1427–1428.) These affidavits underscore that Defendant did not exercise control over the methods that Boedeker used during her representation of Saenz and Norman. In her response, Plaintiff fails to provide any evidence that Defendant exercised sufficient control over Boedeker's work to establish an employment or agency relationship. Instead, she offers only a conclusory assertion that "Defendant owes Plaintiff damages, due to their agent, Michelle

22

Boedeker's defamatory email, inducement of a fraudulent lawsuit, fraud, fraud misrepresentation, and false statements." (ECF No. 42, PageID.1525.) As such, the Court finds that Boedeker was acting as an independent contractor and was not an employee or agent of Defendant. Accordingly, Defendant may not be held vicariously liable for the statements made in the alleged email sent by Boedeker, and summary judgment on Plaintiff's defamation and IIED claims is granted.

## H.   Intentional Misconduct

Additionally, the complaint asserts a claim labeled "intentional misconduct" and cites to 42 U.S.C. § 1791. (ECF No. 1, PageID.28.) However, that statute—the Bill Emerson Good Samaritan Food Donation Act—protects individuals, nonprofit organizations, and direct donors from civil and criminal liability related to food donations. *See* 42 U.S.C. § 1791. Plaintiff's response fails to further explain the basis for this claim or why § 1791 applies to this case. Thus, the Court grants summary judgment for Defendant on Plaintiff's intentional misconduct claim.

## I.   Stalking

Plaintiff also brings a claim against Defendant for stalking.[13] (ECF No. 1, PageID.30.) Michigan law authorizes a victim of stalking to bring a civil action against the perpetrator. Mich. Comp. Laws § 600.2954(1). "Stalking" is defined as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Id.* § 750.411h(1)(d). "'Course of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." *Id.* § 750h(1)(a). Michigan law also defines "harassment" as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that

---

[13] To the extent Plaintiff asserts her stalking claim under 18 U.S.C. § 2261 (*see* ECF No. 1, PageID.3), that federal criminal statute covering interstate domestic violence does not provide a private cause of action. *See Rock v. BAE Sys.*, 556 F. App'x 869, 870–71 (11th Cir. 2014) (holding that 18 U.S.C. §§ 2261 and 2261A do not provide a private right of action). However, because Plaintiff is proceeding *pro se*, the Court will consider this claim under Michigan law.

actually causes the victim to suffer emotional distress." *Id.* § 750.411h(1)(c). However, "[h]arassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." *Id.* The Michigan Supreme Court has found that surveillance conducted by licensed private investigators "to obtain evidence concerning a party's claim in a lawsuit, is valid and well within the law." *Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712, 724 (2005); *see also* Mich. Comp. Laws § 338.822(b). "It is only when the surveillance ceases to serve or contribute to the purpose of securing the information permitted by MCL 338.822(b) that conduct would be outside the statutory safe harbor of MCL 750.411h(1)(c) and a civil action for stalking could be maintained." *Nastal*, 471 Mich. at 724.

Here, Plaintiff alleges that "Defendant put a tracker on Plaintiff's truck in 2016 has been 'drone stalking' her ever since over the past 5 years." (ECF No. 1, PageID.28, 30.) In her response, Plaintiff states: "To date, Michelle Boedeker has never 'personally' met Joy Rahaman, although she has spent the last five years stalking, drone stalking, and paying Plaintiff[']s neighbor for 'monitoring, observation, and footage of Rahaman's daily activities, and to track and report all license plates on

25

vehicles seen in her driveway.'" (ECF No. 42, PageID.1518–1519; *see also*
ECF No. 42-1, PageID.1536.)

In support of its motion, Defendant provides evidence that
contradicts Plaintiff's allegations and assertions. Snyder's affidavit
explains:

> 5.    State Farm retained a company to conduct one day of
> surveillance on Ms. Rahaman, which occurred before she filed
> her lawsuit against Mr. Saenz and Ms. Norman.
>
> 6.    That was the only surveillance State Farm had
> conducted of her.
>
> . . . .
>
> 14.    State Farm has not tracked, nor retained a company to
> track or surveil Ms. Rahaman with a drone before, during, or
> since her litigation ended.

(ECF No. 39-9, PageID.1428.) Boedeker states that she "did not arrange
for any drone or other surveillance of Ms. Rahaman during or after her
lawsuit." (ECF No. 39-6, PageID.1413.)

Plaintiff does not put forward any evidence that Defendant engaged
in stalking under Michigan law. While Defendant admits to conducting
one day of surveillance on Plaintiff, the surveillance appears to have been
done in anticipation of Plaintiff's litigation over the accident, so the

"statutory safe harbor" of Mich. Comp. Laws § 750.411h(1)(c) applies. Moreover, there is nothing in the record that demonstrates that Defendant engaged in a "course of conduct" beyond a single instance of surveillance that would constitute stalking. And for the reasons set forth above, Defendant cannot be held vicariously liable for the alleged actions of Boedeker. Accordingly, the Court grants summary judgment to Defendant on Plaintiff's stalking claim.

## J.   Bad Faith Practices

The complaint asserts a claim for "bad faith practices" and alleges that Defendant "intentionally demoralized and assassinated the Plaintiff's character to make her look worse than the white female driver who hit and ran, to avoid assuming responsibility." (ECF No. 1, PageID.31.) The basis for Plaintiff's claim is not clear, and she does not elaborate on this claim in her response. However, Michigan courts do not recognize a cause of action for bad faith or breach of the implied covenant of good faith and fair dealing. *See Bank of Am., NA v. Fid. Nat'l Title Ins. Co.*, 316 Mich. App. 480, 501 (2016) ("Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."); *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 401–02

(2006) ("An alleged bad-faith breach of an insurance contract does not state an independent tort claim."). As such, the Court grants summary judgment to Defendant on Plaintiff's claim for bad faith practices.

## K.    Additional Discovery

Finally, the Court briefly addresses Plaintiff's notices seeking additional discovery from Defendant. (ECF Nos. 58, 59.) In light of Plaintiff's *pro se* status, the Court construes her notices as a request for additional discovery under Federal Rule of Civil Procedure 56(d). That portion of the rule governing summary judgment provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "[T]he party opposing a motion for summary judgment . . . possesses no absolute right to additional time for discovery under Rule 56." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (second alteration in original) (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989)). The decision to allow for additional discovery is

discretionary, and the district court may deny the request if it "would be irrelevant to the underlying issue to be decided" or "is overly broad or would prove unduly burdensome to produce." *Id.* (quoting *In re Bayer Healthcare & Merial Ltd. Flea Control Prods. Mktg. & Sales Practices Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014)).

A filing under Rule 56(d) "must 'indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.'" *Unan v. Lyon*, 853 F.3d 279, 292–93 (6th Cir. 2017) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)); *see also Burnett v. Herron*, No. 18-CV-12471, 2023 WL 2712476, at *7 (E.D. Mich. Mar. 30, 2023) ("To obtain relief under Rule 56(d), a plaintiff must specify, in pertinent part, how [the] discovery would create a factual dispute sufficient to defeat summary judgment." (alteration in original)). While the "filing of an affidavit that complies with Rule 56(d) is essential," the Sixth Circuit has also held that "a formal affidavit may not be required 'when a party has clearly explained its need for more discovery on a particular topic to the district court prior to or contemporaneously with the motion for summary judgment.'" *Unan*, 853 F.3d at 292–93 (citations omitted).

Plaintiff's notices list twenty-eight document requests. (*See* ECF No. 58, PageID.2008–2009; ECF No. 59, PageID.2012.) However, Plaintiff fails to explain why any of these documents are necessary to respond to Defendant's motion or how the requested discovery would create a genuine dispute of material fact.[14] Even if Plaintiff had provided this information, the Court concludes that none of the discovery sought would alter its analysis of Plaintiff's claims or its decision to grant summary judgment to Defendant. As such, the Court finds that Plaintiff is not entitled to additional discovery under Rule 56(d).

## IV.   Conclusion

For the reasons set forth above, the Court GRANTS Defendant's motion for judgment on the pleadings and/or summary judgment.

The case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: August 23, 2023                  s/Judith E. Levy
Ann Arbor, Michigan                     JUDITH E. LEVY
                                        United States District Judge

---

[14] As Defendant correctly points out, Plaintiff filed her response to Defendant's motion on November 29, 2022—without receiving any additional discovery and prior to filing her notices. (ECF No. 63, PageID.2138; *see also* ECF Nos. 42, 58, 59.) In her response, Plaintiff does not identify any arguments she was unable to address without the additional discovery.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 23, 2023.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager